UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TIMOTHY ALLEN GIBBS,

       Movant,

                                         File No. 1:12-cv-796

v.

                                         HON. ROBERT HOLMES BELL

UNITED STATES OF AMERICA,

       Respondent.

_____/

## O P I N I O N

This matter is before the Court on Movant Timothy Allen Gibbs's motion pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence.  For the reasons that follow, his motion will be denied.

A federal grand jury charged Movant with possession of a ".380 ACP Llama semiautomatic pistol" on or about August 10, 2005, while being a felon, in violation of 18 U.S.C. § 922(g)(1). (Indictment, *United States v. Gibbs*, No. 1:06-cr-3 (W.D. Mich.), ECF No. 1.) After a jury trial in March 2006, Movant was found guilty. On March 1, 2011, following two appeals to the Court of Appeals for the Sixth Circuit, this Court sentenced him to a term of 87 months in prison and 3 years of supervised release.

In this action, Movant raises the following grounds for relief:

I. Mr. Gibbs' conviction is a product of a constitutionally insufficient amount of evidence to prove constructive or actual possession of a firearm. The Court abused its discretion in the denial of the motion under Rule 29. This is a violation of Amendment XIV of the U.S. Constitution.

II. Mr. Gibbs' conviction is a direct violation of due process of a person who is actually innocent in violation of Amendment IV of the U.S. Constitution.

III. Mr. Gibbs was denied a fair trial by an offending opening and closing argument interjecting inflammatory statements demonstrating misconduct by the U.S. Attorney in violation of the Fifth and Fourteenth Amendments of the U.S. Constitution.

IV. Mr. Gibbs was denied a fair trial by ineffective assistance of counsel by failing to object to and [sic] incorrect objections in violation of the Sixth Amendment to the U.S. Constitution.

V. Mr. Gibbs' trial was unfair by the cumulative amount of trial errors resulting in a denial of the Fifth, Sixth, and Fourteen Amendments of the United States Constitution.

(Mem. in Supp. of Mot., ECF No. 3, PageID.31, 40, 43, 56, 60.)

# I.

A prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C. § 2255. To prevail on a § 2255 motion "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A petitioner can prevail on a § 2255 motion alleging

non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotations omitted)).

A court is required to grant a hearing to determine the issues and make findings of fact and conclusions of law on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." 28 U.S.C. § 2255(b). No evidentiary hearing is required if the petitioner's allegations "'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing § 2255 Cases, Rule 4(b). Where the judge considering the § 2255 motion also conducted the trial, the judge may rely on his or her recollections of the trial. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996). Upon consideration of this motion, it plainly appears that Movant is not entitled to relief.

## II.

At trial, Trooper William Coon of the Michigan State Police testified that he was investigating some "breaking and enterings" in the Muskegon area in the summer of 2005. (Tr. I at 23, *United States v. Gibbs*, No. 1:06-cr-3 (W.D. Mich.), ECF No. 51.) Two homes

and toolsheds had been broken into, and several items purchased from Home Depot were stolen. (*Id.* at 24.) An investigator contacted a local Home Depot to see if any of the items were brought back to the store. A clerk at one of the stores remembered two white males who had recently tried to return some items. (*Id.* at 25.) One of them had "funny-looking eyes" and another had a ponytail down his back and a distinctive tattoo on his left arm. (*Id.* at 26.) The investigator gave the descriptions to a parole supervisor in Muskegon, who returned two possible names: Billy Miel and Tim Gibbs. (*Id.*) The parole supervisor for Miel and Gibbs reviewed video surveillance tape from the store and confirmed that Miel and Gibbs were on the tape. (*Id.* at 27.)

Coon interviewed Movant that same day. Movant confirmed that he knew Miel and that they had recently "hung out and done some cocaine together." (*Id.* at 29.) During the interview, Coon learned from another officer that there might be guns at Movant's house. Coon told Movant that the police were going to search his residence, and asked him if there was anything that he was worried about. (*Id.* at 30.) Movant responded that there was. He stated that the police "were gonna find a gun next to his bed at his residence." (*Id.*) Movant told Coon that the gun belonged to his cousin and that his cousin had left the gun at his residence. (*Id.*)

Detective Brent Sowles from the Muskegon County Sheriff's Department testified that he had dealt with Miel in the past and learned from Miel's parole agent, Don Cole, that Miel was spending time with Movant. (*Id.* at 36.) Sowles was present during Coon's interview of Movant. At first, Movant denied having any guns at his house. (*Id.* at 38.) Then, he told Coon

4

and Sowles that his cousin's gun was there. (*Id.*) Sowles then went to Movant's residence at 224 West Grand in Muskegon to conduct a search. (*Id.* at 39.) Sowles went to Movant's bedroom in the basement of the house, where he found a Llama .380 caliber pistol, a box of .380 rounds, some .22 rounds, and a scope. (*Id.* at 41.) The gun and the rounds were located on a shelf next to the headboard of the bed. (*Id.* at 42.) On another shelf, Sowles found paperwork addressed to Movant. (*Id.* at 61.)

Sowles also reviewed a recorded phone call that Movant made the day after he was arrested, while he was detained in jail. (*Id.* at 55.) According to Sowles, in the call, Movant asked the person on the other end of the line to get a hold of Heather or Rachel "to see if actually they would take – say that that was their gun." (*Id.* at 57.)

Trooper Andrew Fias of the Michigan State Police testified that he was also involved in the investigation involving Movant. (*Id.* at 69.) Fias and another officer, Agent Jack Smith, interviewed Movant on September 14, 2005. (*Id.* at 70.) Smith asked Movant about the gun in his bedroom. Movant indicated that he did not know anything about it. (*Id.* at 72.) Smith read Movant a transcript of the recorded phone call. According to Fias, the gist of the call was that Gibbs "was asking the person that he was calling to claim the gun as their gun, not his gun." (*Id.* at 74.)

Miel testified that, during the summer of 2005, he had contact with Movant and Movant's sister, Heather. (*Id.* at 81.) At the time, Heather was living with her mother and a man named Bill in the house on Grand Avenue. (*Id.* at 82.) Defendant was also living there, in a room in the basement. (*Id.* at 83.) Miel saw Movant a "small black gun" at the house that

summer. (*Id.* at 83-85.) Miel saw it for "a quick second"; he did not think it was the same gun as the .380 in evidence before the Court. (*Id.* at 84-85.) The prosecutor reminded Miel about his grand jury testimony, when Miel testified that Movant "was holding a gun, a pistol in his hand, a .380 semiautomatic pistol." (*Id.* at 89.) In response, Miel claimed that he "hadn't seen the gun that was found in the basement supposedly by the parole officer." (*Id.*)

Miel also remembered seeing a few rifles by the wall. (*Id.* at 86.) There were other people in the basement at the time; Miel was not sure if the rifles belonged to those other people. (*Id.* at 87.) On another occasion, Movant told Miel that he needed help taking some shell casings out of his car. (*Id.* at 95.) According to Miel, Movant stopped living at his mother's house in mid to late July, shortly before Movant was arrested. (*Id.* at 106-07.) He had moved in with Anita Gibbs.

Matthew Koeplin testified that he knew Movant from being locked up with him in Muskegon County Jail, in September/October 2005. (*Id.* at 115.) Regarding the gun at issue in the case, Movant told Koeplin that it was not his, and the government "didn't have enough proof . . . it wasn't in his possession, and he did not live at the house at the time." (*Id.* at 118.) Movant told Koeplin that he stole the gun from Troy Ropp's house. (*Id.* at 118, 127, 129.)

Justine Barrett testified that she received a phone call from Movant on August 10, 2005. (*Id.* at 131.) She could not recall the exact words of the call, but in essence, Movant asked her if Rachel or Heather would claim the gun. (*Id.* at 133.)

Parole officer Donald Cole testified that he supervised Movant's parole. (*Id.* at 159.) When Movant was paroled in March 2005, he was paroled to his mother's home, at 224 West

Grand Avenue. (*Id.* at 161.) Movant never requested a change in his residence. (*Id.*) When Movant was being interviewed at the police station by other officers in August 2005, Cole learned from another parolee that Movant had some "long guns, shotguns and/or rifles" hidden in his basement bedroom. (*Id.* at 164.) After Movant finished his interview, Cole approached him and told him that he had information that there were guns in Movant's bedroom and that Cole was on his way to search that location. (*Id.*) Cole asked Movant what he would find. Movant responded that there was a "pistol laying on a shelf a few feet from his bed." (*Id.*)

Cole then went to the home at 224 West Grand Avenue, where he was greeted by Movant's mother, Denise Vos. Cole asked to be led to Movant's bedroom, and she took him to a room in the basement. (*Id.* at 166.) As Cole entered the bedroom, he saw a black pistol on the shelf to the left of the bed, as Movant had described. (*Id.* at 167.) The pistol was a Llama .380 caliber handgun. (*Id.*) After the search of the bedroom, Cole interviewed Movant, who told Cole that he knew the gun was in the bedroom but that it was his cousin's gun. (*Id.* at 169.) Movant told him, "just because it's in my bedroom doesn't mean it's in my possession." (*Id.*)

After Cole's testimony, the Government rested its case and Movant's counsel moved for acquittal under Rule 29, on the basis that the Government failed to show that Movant had constructive possession of the .380 pistol. (*Id.* at 183.) The Court denied the motion.

Movant's mother, Denise Vos, testified on behalf of the defense that her basement was used by many people in the summer of 2005. (*Id.* at 195.) At some point during the summer,

7

Movant started staying with his ex-wife, Anita Gibbs. (*Id.* at 196.) After that time, Movant's sister Heather and her friend Rachel moved into the basement and would usually stay there with their boyfriends. (*Id.* at 197.) There is a back door to the basement, and people could come and go without Vos knowing about it. (*Id.* at 198.) She never saw Movant with any guns at the house.

On cross-examination, Vos confirmed that Movant was still paroled to her house on August 10, 2005, that he still received mail at that address, and that some of his things were still in his bedroom. (*Id.* at 200.) She also confirmed that she led the officers to the room in the basement when they asked her where Movant's room was located. (*Id.*)

## III.

### A. Ground I: Insufficient Evidence & Abuse of Discretion

Movant claims that there was insufficient evidence to convict him of possession of the .380 Llama pistol. A challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. "'Circumstantial evidence alone, if substantial and competent, may support a verdict and need not remove every reasonable hypothesis except that of guilt.'" *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002) (quoting *United States v. Talley*, 194 F.3d 758, 765 (6th Cir.1999)). The *Jackson* standard recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw

8

reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319. Issues of credibility may not be reviewed by the Court. *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006).

"Under 18 U.S.C. § 922(g)(1), a defendant may be convicted based on either actual or constructive possession of a firearm. Actual possession requires that the defendant have 'immediate possession or control' of the firearm." *United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007) (quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973)). "Constructive possession exists when a person does not have possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *Craven*, 478 F.2d at 1333. "[C]onstructive possession may be proven if the defendant merely had 'dominion over the premises where the firearm is located.'" *Grubbs*, 506 F.3d at 439 (quoting *United States v. Gardner*, 488 F.3d 700, 713 (6th Cir. 2007)). "Furthermore, it is not enough that the defendant possessed a firearm at some unidentified point in the past; the evidence must prove that the defendant possessed the same handgun 'identified in the indictment.'" *Id.* (quoting *United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2007)).

On appeal, the Sixth Circuit summarized the evidence against Movant as follows:

In the present case, the government had overwhelming evidence that Gibbs had actual or constructive possession of the .380 Llama pistol, including Gibbs's admission that there was a gun in his bedroom on a shelf just above his bed. When the officers arrived at 224 West Grand Avenue, Gibbs's mother identified the basement bedroom in which the gun was found as Gibbs's bedroom. The gun was discovered exactly where Gibbs said it would be. Miel also testified in front of the grand jury that he had witnessed Gibbs handle the

.380 Llama pistol on several occasions. Although Miel tried to recant some of this testimony at trial, the government read portions of the grand jury testimony into evidence. The jury was free to believe or disbelieve either the grand jury testimony or the trial testimony of Miel. Finally, Gibbs made a recorded phone call from jail where he acknowledged that officers "got" him by recovering the pistol from his bedroom, and inquiring as to whether someone else would claim ownership of the gun so that he could escape prosecution.

*United States v. Gibbs*, 506 F.3d 479, 485 (6th Cir. 2007).

In light of the "overwhelming" evidence discussed above, Movant cannot claim that this evidence, viewed in the light most favorable to the prosecution, was insufficient to convict him.

Similarly, Movant cannot claim that the Court abused its discretion when denying the Rule 29 motion for acquittal. Rule 29 of the Federal Rules of Criminal Procedure uses a standard like that in *Jackson*. "[A] trial judge confronted with a Rule 29 motion must consider all of the evidence in a light most favorable to the government." *United States v. Head*, 927 F.2d 1361, 1365 (6th Cir. 1991). Viewing the evidence in a light most favorable to the Government, the evidence was more than adequate to find Movant guilty of possession of the .380 Llama pistol. Thus, the Court did not abuse its discretion when denying the motion. In summary, Ground I is meritless.

**B. Ground II: Actual Innocence**

Movant claims that his conviction violates his right to due process under the Fourteenth Amendment because he is actually innocent. The Supreme Court recognizes a difference between a "gateway" claim of actual innocence and a "freestanding" claim. *See*

*House v. Bell*, 547 U.S. 518, 554 (2006). A gateway claim permits prisoners asserting actual innocence to avoid a procedural bar in order to raise an independent ground for relief. *Id.* at 536-37; *see Bousley v. United States*, 523 U.S. 614, 623 (1998) (applying actual innocence standard to petition under § 2255). A freestanding claim of innocence, which is what Movant appears to be asserting, is an attempt to prove innocence outright. *See House*, 547 U.S. at 554-55. A freestanding claim has never been recognized by the Supreme Court in a non-capital case, though in *House* the Court recognized that the standard for such a claim would be "'extraordinarily high,'" higher than what would be required to prove a gateway claim. *Id.* at 555 (quoting *Herrera v. Collins*, 506 U.S. 390, 417 (1993)).

To establish a gateway innocence claim, Movant "must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). Movant has not satisfied this standard. He offers no new evidence, let alone evidence that would make it more likely than not that no reasonable jury would convict him. Consequently, he cannot meet the higher standard for establishing a freestanding claim of innocence.

### C. Ground III: Prosecutorial Misconduct

Movant contends that he was denied a fair trial because of "misleading" statements made by the prosecutor during opening and closing arguments. The Sixth Circuit applies a "two-step analysis" to claims of prosecutorial misconduct.

> "First, we determine whether prosecutorial statements allegedly constituting misconduct were improper. Next, if we find impropriety, we 'then determine whether the improprieties were flagrant such that reversal is warranted.'"

> *United States v. Eaton*, 784 F.3d 298, 309 (6th Cir. 2015) (citation omitted)
> (quoting *United States v. Kuehne*, 547 F.3d 667, 687 (6th Cir. 2008)). Under
> the flagrancy prong, the court considers four factors: "(1) whether the conduct
> and remarks of the prosecutor tended to mislead the jury or prejudice the
> defendant; (2) whether the conduct or remarks were isolated or extensive; (3)
> whether the remarks were deliberate or accidentally made; and (4) whether the
> evidence against the defendant was strong." *Id.*

*United States v. Al-Din*, 631 F. App'x 313, 334 (6th Cir. 2015).

Movant objects to the following statements:

1. "Trooper Coon will tell you that the defendant admitted having a gun on a shelf near his bed. . . . You will also hear the testimony of Detective Brent Sowles . . . and . . . the defendant's parole officer, Donald Cole, both of whom interviewed the defendant following that search. The defendant admitted to both of them that he had the gun in his room." (Tr. I at 13.)

This statement was not improper because it accurately reflected Coon's testimony that Movant told Sowles, and Cole that there was a gun next to his bed. Movant insists that he stated that the gun was not his. However, the issue is whether Movant *possessed* a firearm, not whether he owned one. If he possessed a gun belonging to someone else, then he violated the statute.

2. "During the course of this trial you will also have the opportunity to listen to an audio recording of a phone call made by the defendant from the Muskegon County Jail where he tells the person he calls to have Heather or Rachel . . . claim the gun from him . . . ." (Tr. I at 13.)

12

Movant asserts that Heather and Rachel testified that Movant never asked them to claim the gun. However, the prosecutor's statement is consistent with Barrett's testimony that Movant asked *Barrett* if Heather or Rachel would claim the gun. (Tr. I at 133.) Thus, the prosecutor's statement was not improper.

3. "[Y]ou will also hear testimony from witnesses who actually saw the defendant with this gun." (Tr. I at 14.)

Movant contends that this statement is false because Miel testified that he saw Movant holding a gun, but he did not think it was the .380 Llama. (Tr. I at 85.) But Miel's testimony was somewhat equivocal on this point. He asserted that he saw Movant with "a little black gun." (*Id.* at 84.) He had a "glance" at it for a "quick second," and according to Miel, "it could have been a .380, it could not have been a .380[.]" (*Id.*) Later, when shown the gun recovered from Movant's bedroom, he stated, "I don't think it was that gun, no, to be honest." (*Id.* at 85.) However, on cross-examination, he conceded that he testified before a grand jury that he saw Movant in his basement holding a ".380 semiautomatic pistol." (*Id.* at 89.) Thus, the prosecutor's statement was not improper because it accurately reflected the totality of Miel's testimony.

4. "[T]his firearm was found in the defendant's bedroom just two feet from his bed." (Tr. II at 237, *United States v. Gibbs*, No. 1:06-cr-3 (W.D. Mich.), ECF No. 52.)

Movant claims that he was living with Anita Gibbs, and that his sister Heather was using the basement as her living space and, thus, it was misleading to state that the gun was found in his bedroom. However, his mother testified that she led the police to Movant's

13

bedroom when they asked where it was located. In addition, Movant told Officer Coon that a gun would be found next to his bed.

5. "Billy Miel testified. Obviously didn't want to be here. Only afraid of being here. . . . He saw the defendant with a gun and he saw a number of long guns there. There's ammunition for other guns. There's a scope for other guns." (Tr. II at 238.)

Movant contends that Miel never stated that he was afraid. But the prosecutor's statement was merely an observation about Miel's testimony and demeanor in front of the jury. The jury could observe with its own eyes whether or not Miel was afraid. Thus, this statement was not improper or misleading. Moreover, it was irrelevant to Movant's guilt.

Movant also contends that Miel did not actually see Movant with the gun, but the prosecutor's assertion is supported by the evidence, particularly Miel's grand jury testimony.

6. "What did Matt Koeplin testify? . . . the defendant says . . . they got me on this gun thing, but they can't prove I possessed it. They don't know where I got it. Got it from Ropp's." (Tr. II at 240.) This statement accurately describes Koeplin's testimony.

7. "Ladies and gentlemen, do not be fooled. It's defense's job to throw up smoke and mirrors, but do not be fooled. Our star witnesses were not Billy Miel and Matt Koeplin. The government takes the witnesses that we're dealt, the witnesses that surround the defendant. That's who we have. Who's the star witness? That's the star witness. As I said before, that's all you need. As you were told in opening, it's a simple case. The gun's in his room. The Judge will instruct you. The gun's in his room; it's his room; it's his bed. Those are his

14

words. Star witness's words. In my room, two feet from my bed, you'll find a gun." (Tr. II at 264.)

Movant claims that this statement reverses the burden of proof. It does no such thing. Movant also claims that the statement "degrade[s] counsel" and that it misquotes testimony. (Movant's Br. 31, ECF No. 3.) Movant's assertions are unsupported.

8. "Matt Koeplin clearly—anybody who takes the stand is going to be nervous, and he was nervous and scared, and he was back and forth about when he told Agent Smith what. But he only talked to Agent Smith one time and Agent Smith wrote his report about their September 14th interview, and in that report it was clear that Matt Koeplin told him he had talked to the defendant and the defendant said, Yeah, I'm in on this or that. They got this gun charge on me, but it isn't gonna stick. They don't know where I got it from. That's in his report. So to believe defense, you've got to believe Jack Smith lied. You got to believe Jack Smith wrote his report on September 14th about that interview and lied and put in the information that he was told at some later date by Matt Koeplin. That's what you have to believe. Matt Koeplin's got no reason to lie. He's not getting anything. He's getting no deals. He didn't want to be here. Clearly did not want to be here." (Tr. II at 267.)

Movant claims that the prosecutor was improperly vouching for witnesses, implying that Agent Smith was incapable of lying. Agent Smith was not a witness in the case, and the prosecutor did not claim that Smith was incapable of lying.

Movant also refers to the statement that Koeplin had "no reason to lie" as an instance of improper vouching. " 'Improper vouching occurs . . . when 'the prosecutor argues evidence

15

not in the record, or when the prosecutor supports the credibility of a witness by expressing a personal belief in the truthfulness of the witness's testimony, thereby placing the prestige of the office of the United States Attorney behind that witness.'" *United States v. Bailey*, 547 F. App'x 756, 761 (6th Cir. 2013) (quoting *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001)).

The prosecutor did not vouch for the credibility of Koeplin as a witness by stating a personal belief about Koeplin's credibility; rather, the prosecutor indicated that, as a factual matter, there was no reason for Koeplin to lie. Thus, the prosecutor did not engage in improper vouching.

9. "He's busted for the gun and he calls a friend, Justine, and you can listen to it if you don't believe me. This is exactly what it says. 'Well, they got me. They got that pistol at my house.'" (Tr. II at 269.)

Movant objects to the fact that the prosecutor quoted a portion of the phone conversation and stated that Movant was "busted" for the gun. Movant contends that this statement implies that Movant was busted for *his* gun; however, the prosecutor did not make any assertion about who owned the gun.

10. During defense counsel's closing argument, counsel pointed out that Miel had been convicted of receiving and concealing firearms. (Tr. II at 247.) The prosecutor, apparently not hearing defense counsel correctly, objected that Miel "never said receiving and stealing." (*Id.*)

16

Although this objection was not necessary, it was not improper for the prosecutor to assert that "receiving and stealing" was not the basis for Miel's conviction.

Because Movant has not identified any impropriety in the prosecutor's statements, Movant has not demonstrated prosecutorial misconduct.

### D. Ground IV: Ineffective Assistance of Counsel

Movant also asserts a claim of ineffective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. Movant must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Movant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Movant's claim is premised upon his belief that his counsel should have objected to the statements by the prosecutor discussed in Ground III. However, none of those statements

17

were improper. Counsel's assistance is not objectively unreasonable when counsel fails to raise meritless objections. Moreover, Movant cannot establish that the result of his proceedings would have been different if counsel had made such objections.

Movant also claims that counsel failed to make a *proper* objection to testimony about the investigation into the home invasions and the fact that Home Depot employees told an investigator that Gibbs tried to return some items to the store. Counsel objected that such testimony was not relevant, but this objection was overruled. (Tr. I at 25.)

Movant asserts that counsel should have objected based on the fact that this evidence was more prejudicial than probative and the fact that the issue was already ruled upon in a motion in limine. But counsel did refer to the motion in limine in his objection. (*Id.*) That motion was based on the fact that the evidence of uncharged conduct was more prejudicial than probative. Consequently, counsel did not act unreasonably. Moreover, Movant cannot show prejudice from the introduction of this evidence because the evidence of his guilt was "overwhelming." *Gibbs*, 506 F.3d at 485. Thus, Ground IV is without merit.

### E. Ground V: Cumulative Error

Finally, Movant argues that the cumulative effect of the aforementioned errors requires reversal of his conviction. Under cumulative-error analysis, "a defendant must show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair." *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004). "[E]rrors that might not be so prejudicial as to amount to a deprivation of due process when

considered alone . . . may cumulatively produce a trial setting that is fundamentally unfair." *Id.*

As explained above, Movant has failed to show any error in his criminal proceedings. Non-errors cannot cumulatively produce a fundamentally unfair trial.

## IV.

In summary, the files and records in this case conclusively show that Movant is entitled to no relief under § 2255. Accordingly, no evidentiary hearing is required to resolve the merits of the pending motion. For the reasons stated herein, Movant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be denied.

In addition, the Court will deny Movant's pending motion to proceed *in forma pauperis* because it is not necessary. Movant is not required to pay any fees in order to proceed.

Pursuant to 28 U.S.C. § 2253(c), the Court must also assess whether to issue a certificate of appealability. To warrant a grant of a certificate of appealability, Movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Sixth Circuit Court of Appeals has disapproved of the issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Upon review of each claim, the Court does not believe that

19

reasonable jurists would find its assessment of Movant's claims to be debatable or wrong.

Accordingly, a certificate of appealability will also be denied as to each claim.

An order and judgment consistent with this opinion shall be entered.


Dated: <u>June 10, 2016</u>                    <u>/s/ Robert Holmes Bell</u>
                                           ROBERT HOLMES BELL
                                           UNITED STATES DISTRICT JUDGE

20